Fuchsberg, J.
(dissenting). The issue here is sharply etched. To quote the majority, "the Administrative Board has never questioned appellant’s mental or physical competence and it has determined at least impliedly * * * that additional judicial services are necessary to expedite the business of the Supreme Court in the First Judicial Department”. Having thus met both constitutional requirements for continued post-retirement service as a Justice of the Supreme Court, says the petitioner, he is entitled without more to certification pursuant to article VI (§ 25, subd b) of the New York Constitution. But no, insists the Administrative Board (and this court today agrees), his continuance in office is within its unfettered discretion, to be exercised essentially free from public view and judicial accountability, no matter that it is based on undisclosed "non-objective evaluations” and "personal if not private considerations”.
I would reject the assertion of this untrammeled authority and would support the petitioner in his resistance to what I conceive to be an unconstitutional arrogation of power.
It is common knowledge that, when article VI (§ 25, subd b) was adopted by the people in 1962, it was intended to accomplish a well-defined purpose — the removal of the 70 year age bar that compelled the automatic retirement of experienced Judges whom time had not deprived of mental acuity and physical vigor and who, at little more than the cost of the pensions they would otherwise receive, could help meet the mounting litigation pressures facing our courts. Though the proposal was bruited about for the better part of a decade — in our legislative halls, in the press, at public hearings, and in reports of special studies — the only qualifications for post-70 continuation ever contemplated were the need for judicial manpower and the Judge’s good health. Specifically, there was no hint that discretion to serve would rest with anyone but the eligible Supreme Court Justice. In short, the net result, for those who met the two delineated conditions, was that retirement would be optional rather than compulsory. Not *684 surprisingly, then, we have searched high and low without turning up any evidence of any contrary intent (see, e.g., New York State Temporary Commission on the Courts, Public Hearing on Methods of Selection and Qualifications, Tenure and Retirement of the Judiciary [1955]; Judicial Conference of the State of New York, Recommendations for Modernization of the Court Structure in the State of New York [Nov. 10, 1958]; NY Legis Ann, 1962, p 372).
Significantly, aside from designating the board to handle the program’s administration, the implementing statute, section 115 of the Judiciary Law, does no more than track the twin requirements of court need and judicial health. Apparently recognizing that the clear and simple mandate of the amendment invited no legislative or judicial leeway and paying due deference to this expression of public will, the Legislature neither added to nor subtracted from it.
This view of the amendment and the statute also comports with the reality of things. As the majority puts it, a Justice of the New York State Supreme Court, our court of broadest jurisdiction, stands "near the top of the hierarchy of governmental service”. The office is elective. It is protected by the security of a 14-year term. In the main, as in the present case, if he served beyond age 70, a Judge would still be within the term for which he was elected. Nothing, in or out of the amendment, lends credence to the idea that the electorate ever intended to turn over the process of choosing its Judges to the Administrative Board. Surely such a transfer or dilution of the power to select those who play leading roles in our government is not to be the product of easy inference. Is it conceivable that such a fundamental privilege was to be surrendered as an unexpected adjunct to what was no more than an extension of retirement age?
It is also hard to believe that the amendment was seen as a way to back into a system of recall, or as a means whereby the voters’ choice could be rescinded, or a method by which a Judge, even one with a blameless record, would be subjected to ex parte grading. Yet, one or all of these are potential consequences of the expansive power the board would take unto itself — the absolute and, for all practical purposes, final right to say whether a particular Judge should stay or go.* *685 For, as the majority agrees, the certification process constitutes the "inauguration of a new designation to judicial office”. Still worse, whether the "new designation” is to be or not to be is to hang over the head of every "certified” Judge every two years.
Which brings me to an overriding concern, the imperative for an independent judiciary. Henceforth, it now appears that a Judge serving a preretirement term and for each ensuing two-year stint that follows is to be ever conscious of the fact that his or her tenure may be forfeit to unpopularity or nonconformity, be it the result of doctrinal differences, a lack of. gregariousness, or any other expression of personality, ideology or style. Or, perhaps, just whim or caprice. After all, the board, in its well-nigh unlimited, unrestrained power to choose among its old judicial colleagues, will need to consult no one and, when it does, its informants’ identities will not need to be revealed. So, in the present case, while the board in its briefs on appeal advises that it had sought the opinions of Judges and others, it does not disclose the names of those it solicited or the contents of their communications and, needless to say, permits no opportunity for confrontation or for reply. By way of contrast, it should not be lost on us that, as Special Term pointed out, in enacting section 115 of the Judiciary Law, the Legislature gave consideration to the provisions for continuation of Federal Judges who have reached retirement age, a model laying great stress on judicial independence.
For these reasons, I would reverse the order of the Appellate Division and reinstate the judgment of Special Term, which directed the board to certify the appellant.
Judges Jasen, Gabrielli and Wachtler concur with Judge Jones; Judge Fuchsberg dissents and votes to reverse in a separate opinion. Chief Judge Cooke taking no part.
Order affirmed.

 Because the need for judicial services is unquestioned in this case, it is unnecessary at this time to treat with the not at all insoluble situation that would arise if the number of eligible Judges should exceed the number that are needed.